# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CARDIOVASCULAR SPECIALTY CARE CENTER OF BATON ROUGE, LLC | CIVIL ACTION |
| VERSUS | NO. 14-235-BAJ-RLB |
| UNITED HEALTHCARE OF LOUISIANA, INC. | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on January 7, 2015.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CARDIOVASCULAR SPECIALTY
CARE CENTER OF
BATON ROUGE, LLC                                  CIVIL ACTION

VERSUS                                                          NO. 14-235-BAJ-RLB

UNITED HEALTHCARE OF
LOUISIANA, INC.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion to Remand. (R. Doc. 6). The motion is opposed. (R. Doc. 9). Plaintiff has filed a Supplemental Memorandum in Support of Motion to Remand. (R. Doc. 17). Based on the record and the applicable law as set forth below, Plaintiff's Motion to Remand should be denied.

**I.**        **BACKGROUND**

On or about March 17, 2013, Plaintiff Cardiovascular Specialty Care Center of Baton Rouge, LLC, ("Cardiovascular") filed this suit in the 19th Judicial District Court for the Parish of East Baton Rouge, Louisiana, naming United Healthcare of Louisiana, Inc. ("United") as the sole Defendant. (Petition, R. Doc. 1-1) Cardiovascular operates a medical practice specializing in cardiology and provides medical services to 55 patients insured by United ("United Insureds"). (Petition, ¶¶ 4-6). The Petition does not identify the specific insurance policies at issue and only identifies the United Insureds by their ID numbers. Cardiovascular alleges that United preauthorized it to treat the United Insureds for certain medical services and informed Cardiovascular that it would be reimbursed for those medical services. (Petition, ¶¶ 8-9). Cardiovascular claims that it has not been paid by United for these services and that it is owed $1,553,612.33, the total usual and customary rates for the services provided. (Petition, ¶¶ 12-

1

16). Cardiovascular further alleges that the United Insureds have assigned to Cardiovascular their claims for reimbursement from United. (Petition, ¶¶ 10, 28, 37). Cardiovascular seeks to recover the alleged unpaid amounts, plus any additional interest, penalties, and fees through state law causes of action for open account, breach of contract, failure to investigate, and bad faith. (Petition, ¶¶ 23-44).

On April 17, 2014, United removed this action alleging that this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(a) of the Employee Retirement Income Security Act ("ERISA"). (R. Doc. 2). United request the Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any state law claims that are not completely preempted. (R. Doc. 2 at 4).

On May 14, 2014, Cardiovascular moved to remand the action to State Court. (R. Doc. 6).

## II. ARGUMENTS OF THE PARTIES

Cardiovascular raises two arguments in support of its Motion to Remand. First, Cardiovascular argues that United has not provided sufficient information in its Notice of Removal to support a finding that an ERISA plan is at issue. Cardiovascular claims that United cannot submit evidence proving the existence of an ERISA plan through post-removal briefing. Second, Cardiovascular argues that the Petition only alleges state law causes of action that are not subject to complete preemption by ERISA. More specifically, Cardiovascular argues that its claims arise from obligations independent of the insurance policies at issue.

In opposition, United asserts that the Court has federal question jurisdiction pursuant to the complete preemption doctrine. United argues that Cardiovascular has confused complete preemption pursuant to 29 U.S.C. § 1132(a) (ERISA § 502(a)), which subjects state law claims

to removal under federal question jurisdiction, with conflict preemption pursuant to 29 U.S.C. § 1144(a) (ERISA § 514(a)), which serves as an affirmative defense to an action under state law. United further argues that Cardiovascular's claims are completely preempted because they were assigned by the United Insureds and must be brought pursuant to ERISA's civil action statute. United submits with its Opposition a declaration and five exhibits to demonstrate that all but two of the Insured Patients are members of ERISA plans.

In reply, Cardiovascular argues that even if the Court considers the declaration and attached exhibits submitted with United's Opposition, it should conclude that United has not proven that the attached documents are ERISA plans.

### III. LAW & ANALYSIS

#### A. Legal Standard for Complete Preemption under ERISA

A district court has removal jurisdiction in any case where it has original jurisdiction, and the court has original federal question jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 1441(a) and 1331. A defendant seeking removal bears the burden of demonstrating that a federal question exists. *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008); *Donelon v. Distribution by Datagen*, No. 12-151, 2012 WL 3028036 at *4 (M.D. La. June 13, 2012) (removing defendant bears the "burden of establishing federal question jurisdiction via the exception of complete preemption under ERISA."), *report and recommendation adopted*, 2012 WL 3028027 (M.D. La. July 24, 2012). Ordinarily, determining whether a case arises under federal law is governed by the well-pleaded complaint rule—a federal court has original or removal jurisdiction only if a federal question appears on the face of the plaintiff's well-pleaded complaint. The fact that federal law may provide a defense to a state law claim is insufficient to establish federal question jurisdiction. *Id.*

An exception to the well-pleaded complaint rule exists, however, when a federal statute totally displaces state law causes of action through complete preemption. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004). When a federal statute completely preempts state law, any claim which comes within the scope of that statute, even if pled in terms of state law, is in reality based on federal law and can be removed. *Id.* ERISA's civil enforcement provision is a complete preemption statute. *Id*.

ERISA § 502(a)(1)(B) provides the following: "A civil action may be brought—by a participant or beneficiary—to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Any state law cause of action that "duplicates, supplements or supplants" the civil enforcement remedies of ERISA § 502(a) conflicts with Congress's intent to make the ERISA remedy exclusive, and is completely preempted. *Davila*, 542 U.S. at 209. "[I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope of' ERISA § 502(a)(1)(B)." *Id.* at 210. "In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Id*.; *see also Woods v. Texas Aggregates, L.L.C.*, 459 F.3d 600, 603 (5th Cir. 2006) ("Where a state law claim merely duplicates the remedies provided in § 502(a), the state law claim is completely preempted and will be recharacterized as a federal claim under § 502(a).") (citing *Davila*, 542 U.S. at 10).

4

Accordingly, Cardiovascular's claims are completely preempted to the extent (1) Cardiovascular is entitled to payment for coverage pursuant to the terms of an ERISA-regulated employee benefit plan, and (2) no legal duty independent of ERISA or the plan terms is violated. *Davila*, 542 U.S. at 209. Furthermore, because the issue is disputed, United has the burden of establishing that at least one of the insurance policies at issue is governed by ERISA. *See Shearer v. Southwest Service Life Ins. Co.*, 516 F.3d 276, 278-79 (5th Cir. 2008); *Donelon*, 2012 WL 3028036, at *3.

B. **Existence of an ERISA Plan**

1. **Whether Consideration of Post-Removal Documents is Proper**

Cardiovascular argues that the Court may not consider evidence of an ERISA plan submitted by United after it filed its Notice of Removal. This argument is without merit.

When determining its jurisdiction, the Court may rely on submissions filed after removal, "so long as the post-removal filing sets forth facts developed at the time of removal." *Dixon v. Nan Ya Plastics Corp.*, No. 07-227, 2007 WL 4561136 at *4 (M.D. La. Dec. 20, 2007). This issue often arises in diversity actions where defendants submit after removal "summary judgment type evidence" to demonstrate that the amount in controversy was not satisfied at the time of removal. The Fifth Circuit has consistently held that these post-removal documents may be considered. *See Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 851 n. 10 (5th Cir. 1999) ("post-petition affidavits are allowable only if relevant" to the time of removal); *Asociacion Nacional de Pescadores (ANPAC) v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 565 (5th Cir. 1993) (where jurisdictional amount was facially ambiguous, court would considered post-removal affidavit as it was "still examining the jurisdictional facts *as of the time* the case [was] removed" even though the information itself was "submitted after removal"), *abrogated on other grounds*

by *Marathon Oil Co. v. A.G. Ruhrgas*, 145 F.3d 211 (5th Cir. 1999); *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) ("While post-removal affidavits may be considered in determining the amount in controversy at the time of removal, such affidavits may be considered only if the basis for jurisdiction is ambiguous at the time of removal."); *Ditcharo v. United Parcel Service, Inc.*, 376 F. App'x 432, 436 (5th Cir. 2010) (facts supporting a finding of the requisite amount in controversy "should be set forth either in the removal petition (the preferred method), or by *subsequent* affidavit.") (emphasis added).[1]

Similarly, courts within the Fifth Circuit have considered documents attached to opposition to motions to remand for determining whether the defendants established federal jurisdiction through the complete preemption doctrine. *See*, *e.g.*, *Perry v. Prudential Co. of Am.*, No. 11-559, 2012 WL 253403, at *3 (M.D. La. Jan. 26, 2012) (considering plan documents attached to opposition to motion to remand); *Posey v. Standard Ins. Co*., 584 F. Supp. 2d 903, 905 (W.D. La. 2008) (considering plan documents attached to opposition to motion to remand); *Blanke v. Lincoln Nat. Corp*., No. 97-3026, 1997 WL 786225, at *4 (E.D. La. Dec. 18, 1997) (considering affidavit attached to opposition to motion to remand.)

Accordingly, the declaration and attached documents submitted with United's Opposition are properly before the Court for the purpose of determining whether an ERISA plan is at issue.

---

[1] Plaintiff's reliance on *Perritt v. Westlake Vinyls Co., L.P.*, 2013 WL 6451774, at *4-5 (M.D. La. Feb. 18, 2014) for the proposition that the court cannot consider post-removal documents for the purpose of determining jurisdiction is misplaced. On the appeal of that decision, the Fifth Circuit found the court's refusal to consider a post-removal affidavit to be harmless error because the post-removal affidavit did not establish jurisdiction. *Perritt v. Westlake Vinyls Co., L.P.*, 562 F. App'x 228, 232 n. 2 (5th Cir. 2014) ("We have noted that '[w]hile post-removal affidavits may be considered in determining the amount in controversy at the time of removal, such affidavits may be considered only if the basis for jurisdiction is ambiguous at the time of removal." (citing *Gebbia v. Wal–Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000); *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1254 n. 18 (5th Cir. 1998) ("We have considered a post-removal *affidavit* when the jurisdictional amount was ambiguous on the face of the state petition.").

The Court will consider these documents to determine whether United has met its burden of proving the existence of jurisdiction at the time of removal.

### 2. Whether an ERISA Plan is at Issue

To be an ERISA plan the arrangement must be: (1) a plan; (2) not excluded from ERISA coverage by the safe-harbor provisions established by the Department of Labor; and, (3) established or maintained by the employer with the intent to benefit the employees. *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993). Cardiovascular only argues that the second prong of the *Meredith* test has not been satisfied. (R. Doc. 6-2 at 5-6; R. Doc. 17 at 5-6). The second prong asks "whether the plan falls within the safe harbor provision promulgated by the Department of Labor." *Meredith*, 980 F.2d at 355. "The safe harbor provision states that a group or group-type insurance program will not be considered an ERISA Plan if (1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; and (4) the employer receives no profit from the plan." *House v. Am. United Life Ins. Co.*, 499 F.3d 443, 449 (5th Cir. 2007) (citing 29 C.F.R. § 2510.3–1(j)).

United submitted a declaration by Jane Spalinski, a legal case information analyst for UnitedHealthcare Legal Services Inc., to support its assertion that all but two of the United Insureds are members of an ERISA plan. (R. Doc. 9-1, "Spalinski Declaration"). According to the Spalinski Declaration, all of the United Insureds identified in the Petition by a "Member ID" are "members of employee welfare benefit plans sponsored by the patient's employer and governed by the Employee Retirement Income Security Act of 1974 ('ERISA') with the exception of two individuals who are both members of a government plan." (R. Doc. 9-1 at 1). The Spalinski Declaration attaches five documents to demonstrate, by example, that all but two

of the United Insureds are members of an employee welfare benefit plan government by ERISA. (R. Docs. 9-2, 10, 10-1, 11, 12, 13, 14).[2]

In response to the declaration and supporting documents, Cardiovascular raises three arguments against a finding that any of the United Insureds at issue are members of an ERISA plan. First, Cardiovascular argues that the Spalinski Declaration is deficient because it is conclusory and fails to provide any individual documentation for each of the United Insureds. (R. Doc. 17 at 4-5). Second, Cardiovascular argues that United has failed to demonstrate the inapplicability of ERISA's safe harbor provision. (R. Doc. 17 at 5-6). Third, Cardiovascular argues that United has failed to meet its burden because it does not contest that two United insureds are members of government plans, and that there is a "government plan" exception to ERISA. (R. Doc. 17 at 6-7).

Cardiovascular's arguments are unpersuasive. That United has not provided evidence of an ERISA plan for each of the 55 Insured Patients at issue does not preclude subject matter jurisdiction. United must only prove, by a preponderance of the evidence, that one ERISA plan is at issue to establish jurisdiction based upon the complete preemption doctrine. The Court may exercise supplemental jurisdiction over the remaining claims. *See Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999) ("If the plaintiff moves to remand, all the defendant has to do is demonstrate a substantial federal claim, *e.g.,* one completely preempted by ERISA, and the court may not remand. Once the court has proper removal jurisdiction over a federal claim, it may exercise supplemental jurisdiction over state law claims, *see* 28 U.S.C. § 1367, even if it dismisses or otherwise disposes of the federal claim or claims."). Consequently,

---

[2] The Spalinski Declaration specifically identifies the following United Insureds as members of an employee welfare benefit plan: Member ID Nos. 903742301, 940619655, 910360794, 903202542, and 858961840. (R. Doc. 9-1 at 2-3).

8

that two United Insureds are members of an excluded "government plan" is irrelevant for determining federal question jurisdiction, so long as at least one United Insured is a member of an ERISA plan. The Court need only examine one of the claims at issue to determine whether an exercise of federal question jurisdiction is proper.

The Spalinski Declaration provides, under penalty of perjury, that the United Insured listed in the Petition as "Member ID 903742301" is a member "of an employee welfare benefit plan sponsored by his employer, Shell Oil." (R. Doc. 9-1 at 2). The Spalinski Declaration attaches a Summary Plan Description describing a employee welfare plan[3] sponsored by Shell Oil, and administered by UnitedHealthcare. (R. Doc. 9-1 at 2; R. Doc. 9-2 at 101). The Spalinski Declaration provides that a United Insured identified in the Petition as "Member ID 903742301" is a member of the employee welfare plan. (R. Doc. 9-1 at 2). Cardiovascular has not submitted controverting evidence suggesting that "Member ID 903742301" was not a member of the plan described in the Summary Plan Description. (R. Doc. 9-2). In light of the absence of controverting evidence, United has established that the United Insured identified in the Petition as "Member ID 903742301" is a member of the employee welfare plan sponsored by Shell Oil, and administered by UnitedHealthcare, for the purpose of the complete preemption doctrine.

Cardiovascular's remaining argument against a finding that an ERISA plan is at issue is that United has not proved the non-applicability of the safe harbor provision to any of the plans (including the plan for Member ID 90374230). As stated above, the Spalinski Declaration

---

[3] Pursuant to ERISA, an "employee benefit plan" includes an "employee welfare benefit plan." 29 U.S.C. § 1002(3). ERISA defines an "employee welfare benefit plan" as any plan, fund, or program which was . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . . 29 U.S.C. § 1002(1).

provides, under penalty of perjury, that the United Insured listed as "Member ID 903742301" is a member "of an employee welfare benefit plan sponsored by his employer, Shell Oil." (R. Doc. 9-1 at 2). In addition, the Court has reviewed the attached Summary Plan Description. This document describes the rights and privileges of employees who participate in the plan pursuant to ERISA. (R. Doc. 9-2 at 98-100). The document further establishes that Shell contributes to the plan. (R. Doc. 9-2 at 9-10). Cardiovascular has not provided any controverting evidence to establish that Shell Oil did not contribute to the plan for which "Member ID 903742301" was a member. Accordingly, based on the Spalinski Declaration and attached documents, United has met its burden of establishing, by a preponderance, that at least one ERISA plan is at issue.[4] The Court rejects Cardiovascular's arguments that the submission of the Spalinski Declaration and attached documents, is insufficient to establish the existent of an ERISA plan.[5]

---

[4] Cardiovascular's reliance on the *Donelon* decision for the proposition that United has not met its burden of establishing the existence of an ERISA plan is unwarranted. First, the *Donelon* decision did not rely on a finding that the defendants failed to prove the existence of an ERISA plan. *See Donelon*, 2012 WL 3028036 at *4 ("[I]t is unnecessary to . . . decide whether there is an ERISA plan to determine whether this court has subject matter jurisdiction under ERISA. Defendants have totally failed to argue or demonstrate that this suit could have been brought by the plaintiff under ERISA."). Second, the *Donelon* decision found that the defendants' arguments regarding the existing of an ERISA plan were "conclusory and unsupported" because the defendants' arguments relied upon exhibits that were not filed into the record. *Id*. at *4 n.14. Here, evidence of an ERISA plan has been filed into the record by United. (R. Doc. 9-2).

[5] Courts within the Fifth Circuit have concluded that an ERISA plan exists based on a review of documents submitted by the defendant. *See*, *e.g.*, *Memorial Hosp. System v. John Hancock Mut. Life. Ins. Co.*, 952 F. Supp. 449, 453 (S.D. Tex. 1996) (reviewing group health insurance plan and plan summary in concluding that plan was governed by ERISA); *Posey v. Standard Ins. Co.*, 584 F. Supp. 2d 903, 905 (W.D. La. 2008) (reviewing application for group life insurance in determining that plan at issue "is clearly governed by ERISA"); *Redeaux v. Southern Nat. Life Ins. Co.*, No. 08-1345, 2008 WL 5427749, at *5 (W.D. La. Dec. 30, 2008) (rejecting plaintiff's "own self-serving affidavit" stating that she believed her deceased son's life insurance policy was not governed by ERISA and finding that defendant's affidavit, which direct the court to "several certified documents entered into evidence" that established the insurance policy was governed by ERISA); *Mackinnon Home Health, Inc. v. Travelers Ins. Co.*, No. 91-3890, 1991 WL 276086, at *1 n. 1 (E.D. La. Dec. 16, 1991) ("The court, upon a review of the plan at issue, finds it to meet the requirements of an ERISA plan.").

### C. Whether Cardiovascular's Claims Pursuant to the ERISA Plan are Completely Preempted

The Court has subject matter jurisdiction pursuant to the complete preemption doctrine if (1) the plaintiff is entitled to payment for coverage pursuant to the terms of an ERISA-regulated employee benefit plan, and (2) no legal duty independent of ERISA or the plan terms is violated. *Davila*, 542 U.S. at 209.

A health care provider such as Cardiovascular has standing to sue pursuant to ERISA § 502 as an assignee of a participant or beneficiary in order to claim plan benefits. *Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525, 529 (5th Cir. 2009); *Quality Infusion Care Inc. v. Humana Health Plan of Texas Inc.*, 290 F. App'x 671, 679 (5th Cir. 2008); *First Choice Surgery Ctr. of Baton Rouge, LLC v. United Healthcare Servs., Inc.*, No. 12-CV-0065, 2012 WL 3109483, at *5 (M.D. La. July 30, 2012); *Memorial Hermann Hosp. System v. Great–West Life & Annuity Ins. Co.*, 2005 WL 1562417, at *4 (S.D. Tex. June 30, 2005). Here, Cardiovascular's claims are all premised on the assignment of benefits from Insured Patients:

- "The United Insureds assigned to Cardiovascular Specialty their claims for reimbursement." (Petition, ¶¶ 10, 37).

- "United is contractually obligated to pay . . . because the United Insureds assigned to Cardiovascular Specialty their claims for reimbursement against United." (Petition, ¶ 28).

Based on the foregoing, Cardiovascular has standing to seek the assigned benefits of the Insured Patients listed in the Petition. The first prong of the *Davila* test is satisfied because Cardiovascular has alleged that the United Insureds have assigned their rights pursuant to their insurance contracts to Cardiovascular.[6]

---

[6] That means that Cardiovascular has alleged that Member ID 903742301 has assigned his or her rights pursuant to an ERISA plan to Cardiovascular, and Cardiovascular is attempting to recover those assigned rights through this action.

The second prong of the *Davila* test is also satisfied. The four causes of action explicitly alleged in the Petition (open account, breach of contract, failure to investigate, and bad faith) are allegedly premised on the contractual rights for benefits assigned to Cardiovascular by the Insured Patients. The Court need only find, for the purpose of establishing subject matter jurisdiction, that one of these causes of action is completely preempted. *Center for Restorative Breast Surgery, L.L.C. v. Humana Health Benefit Plan of Louisiana, Inc.*, No. 10-4346, 2011 WL 1103760, at *1 (E.D. La. Mar. 22, 2011) (citing *Giles*, 172 F.3d at 337). Cardiovascular's breach of contract claim expressly alleges that "United is contractually obligated to pay $1,553,612.33 to Cardiovascular Specialty for the medical services Cardiovascular Specialty rendered to the United Insureds *because the United Insureds assigned to Cardiovascular Specialty their claims for reimbursement against United.*" (Petition, ¶ 28) (emphasis added). Moreover, Cardiovascular seeks to recover "the Usual and Customary Rates pursuant to the United health insurance policies issued to the United Insureds." (Petition, ¶ 13). Cardiovascular does not allege that it has entered into a provider agreement with United that establishes a contractual rate for services separate from the United health insurance policies.[7] Instead, Cardiovascular specifically alleges that it is seeking recovery for breach of contract in light of its assigned rights pursuant to the United health insurance policies, which includes at least one ERISA plan.

---

[7] A claim brought pursuant to a separate provider agreement implicating the rate of payment set forth in the provider agreement would not be completely preempted by ERISA. *See Lone Star*, 579 F.3d 525, 530 (5th Cir. 2009) ("A claim that implicates the rate of payment as set out in the Provider Agreement, rather than the right to payment under the terms of the benefit plan, does not run afoul of *Davila* and is not preempted by ERISA.); *Memorial Hermann*, 2011 WL 3703770, at *3 ("When the question is the right of payment, as opposed to the rate of payment, ERISA complete preemption is triggered and Memorial Hermann's motion for remand must fail."). Here, the issue is the "right of payment" pursuant to the insurance policies, not the "rate of payment" pursuant to a provider agreement.

Based on the allegations in the Petition, Cardiovascular's breach of contract claim premised upon its assignment of rights pursuant to at least one ERISA plan is completely preempted. In support of its Motion to Remand, Cardiovascular alleges that the Petition raises claims for negligent misrepresentation and detrimental reliance. (R. Doc. 6 at 14).[8] Cardiovascular alleges that United's legal duties with regard to these claims do not arise from any ERISA plan. Regardless of whether Cardiovascular has raised separate claims for negligent misrepresentation and detrimental reliance, its claim for breach of contract is based upon assigned contractual rights from the United Insureds.[9] To the extent Cardiovascular has stated claims for negligent misrepresentation and detrimental reliance, and those claims are premised on obligations independent of the insurance policies, then the Court may exercise supplemental jurisdiction over those claims. *Giles*, 172 F.3d at 337.

## IV. CONCLUSION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 in light of the complete preemption doctrine. The Court can exercise supplemental jurisdiction over any remaining state law claims because those claims arise out of the same set of operative facts. *See* 28 U.S.C. § 1367(a); *Exxon Mobil Corp. v. Allapattah Services Inc.,* 545 U.S 546 (2005).

---

[8] The Petition asserts certain factual allegations regarding Cardiovacular's alleged reliance on United's preauthorization of coverage. (Petition, ¶ 8-9). In the next paragraph, however, the Petition expressly states that the "United Insureds assigned to Cardiovasclar Specialty their claims for reimbursement." (Petition, ¶ 10). Because the court can exercise supplemental jurisdiction over any state law claims, it is unnecessary to determine whether the Petition alleges claims for negligent misrepresentation and detrimental reliance for the purpose of resolving the instant motion to remand.

[9] United argues that all of the causes of action alleged in the Petition are completely preempted. (R. Doc. 9 at 4-8). The Court need not decide that issue because it may exercise supplemental jurisdiction over the additional causes of action because they form part of the same case and controversy. *See Center for Restorative Breast Surgery, L.L.C.*, 2011 WL 1103760, at *3-4 (finding complete preemption over defendants' derivative assigned claims and exercising supplemental jurisdiction over defendant's direct claims regardless to the extent they were not completely preempted, which the court did not decide).

## RECOMMENDATION

It is the recommendation of the magistrate judge that the Plaintiff's Motion to Remand should be **DENIED**. The Court may exercise supplemental jurisdiction over any state law claims that are not completely preempted.

Signed in Baton Rouge, Louisiana, on January 7, 2015.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**