# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CARDIOVASCULAR SPECIALTY CARE CENTER OF BATON ROUGE, LLC | CIVIL ACTION |
| VERSUS | |
| UNITED HEALTHCARE OF LOUISIANA, INC. | NO.:14-235-BAJ-RLB |

## RULING AND ORDER

On January 7, 2015, the United States Magistrate Judge issued a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), recommending that Plaintiff Cardiovascular Specialty Care Center of Baton Rouge, LLC's ("Cardiovascular") Motion to Remand (Doc. 6) be denied. (Doc. 18).

The Magistrate Judge's Report and Recommendation specifically notified Cardiovascular that, pursuant to 28 U.S.C. § 636(b)(1), it had fourteen (14) days from the date it received the Report and Recommendation to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. (Doc. 18 at p. 1). A review of the record indicates that Cardiovascular timely filed objections on January 21, 2015. (Doc. 19). Defendant United Healthcare of Louisiana, Inc. ("United") timely filed a response to Cardiovascular's objections on February 2, 2015. (Doc. 22). Each of Cardiovascular's objections will be considered in turn.

In *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), the United States

Supreme Court set forth a two-part test to determine whether claims are completely preempted by ERISA, which would permit removal. The Court stated:

> If an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B) [the civil enforcement provision], *and where there is no other independent legal duty that is implicated by a defendant's actions*, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Id.* at 210 (emphasis added). Cardiovascular argues that the Magistrate Judge misapplied the *Davila* test because United owed an independent legal duty to it, which precludes complete preemption under the Employee Retirement Income Security Act ("ERISA"). (Doc. 19 at p. 5). In opposition, United asserts that Cardiovascular "has not asserted any independent legal duty owed by United in its Petition." (Doc. 22 at p. 3).

As an initial matter, the Court recognizes that Cardiovascular's Petition alleges that United owed a duty independent of any ERISA-regulated plan because United made representations via telephone, prior to Cardiovascular rendering services, that Cardiovascular would be reimbursed by United, and Cardiovascular then reasonably and justifiably relied on this preauthorization in providing medical services. (Doc. 1-1 at ¶¶ 8, 9). However, this is not dispositive under the circumstances. To support its independent duty contention, Cardiovascular cites *Center for Restorative Breast Surgery, L.L.C. v. Humana Health Benefit Plan of Louisiana, Inc.*, No. 10-4346, 2011 WL 1103760 (E.D. La. Mar. 22, 2011), but that case belies Cardiovascular's point. In it, the court stated:

> The propriety of removal . . . depends on the nature of Plaintiffs' causes of action. If Plaintiffs allege only claims arising out of a breach of an independent legal duty assumed by Defendants when Defendants allegedly verified a specific degree of reimbursement, that claim is not completely preempted and there is no federal question jurisdiction for removal. *But if Plaintiffs also derivatively assert their patients' claims for benefits under the Plans pursuant to an assignment, those claims are completely preempted and provide a jurisdictional hook that appears on the face of the petition.*

*Id.* at *2 (emphasis added). The court's analysis then went on to note that the plaintiffs were conflating two distinct concepts: the assignment of rights and pre-procedure verification by the defendants. *Id.* Thus, although the plaintiffs brought direct claims and derivative claims, the jurisdictional question was easily resolved by the existence of the derivative claims. *Id.* at 3.

Similarly, although Cardiovascular's Petition does appear to assert a direct claim, (*See* Doc. 1 at ¶¶ 8, 9), the bulk of Cardiovascular's claims require Cardiovascular to step into the shoes of the fifty-five patients insured by United ("United Insureds"), and assert the duty to reimburse pursuant to those fifty-five patients' plans – not a duty to reimburse pursuant to a separate agreement. (*Id.* at ¶¶ 10, 28, 37). Thus, Cardiovascular's Petition confirms that it has made claims in a derivative capacity in addition to asserting direct claims arising out of United's alleged preauthorization. *Id.* Though it is unclear whether Cardiovascular's derivative claims are pled as an alternative to, or in addition to its direct claim, the fact that they have articulated the derivative claims as a means of obtaining reimbursement confers jurisdiction upon this Court. *See Center for Restorative*

*Breast Surgery, L.L.C.*, 2011 WL 1103760, *2 (citing *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1346-47 (11th Cir. 2009)).

Having established jurisdiction through that claim, this Court is permitted to exercise supplemental jurisdiction over any remaining claims. *See Giles v. NYLCare Health Plans, Inc.*, 172 F. 3d 332, 337 (5th Cir. 1999) ("once the court has proper removal jurisdiction over a federal claim, it may exercise supplemental jurisdiction over state law claims") (citing 28 U.S.C. § 1367). This Court need only find, for the purpose of establishing subject matter jurisdiction, that one cause of action is completely preempted. *Id.* Here, Cardiovascular's breach of contract claim, which, pursuant to its Petition, is premised upon its assignment of rights, is completely preempted.[1] Therefore, even if the claims for negligent misrepresentation and detrimental reliance[2] are obligations independent of insurance policies, this Court may still exercise supplemental jurisdiction over those claims because at least one cause of action is completely preempted.

In its second objection, Cardiovascular argues that this Court may not consider post-removal evidence after the filing of the notice of removal. (Doc. 19 at p. 8). In opposition, United argues that "[i]t is the facts at the time the case is

---

[1] The Magistrate Judge's Report also found that other claims alleged in the Petition (open account, failure to investigate, and bad faith) are completely preempted because they are based on the contractual rights for benefits assigned to Cardiovascular by the United Insured. (Doc. 18).

[2] United contends that Cardiovascular has not asserted claims of detrimental reliance and negligent misrepresentation. (Doc. 22 at pp. 3-4). For purposes of this motion, the Court need not decide this issue, because as discussed above, the Court is satisfied that at least one, if not multiple claims, are completely preempted.

removed that are critical," and United clearly indicated that the plans at issue were subject to ERISA. (Doc. 2 at p 2; Doc. 22 at p. 7) (citing *Gebbia v. Walmart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000)).

Cardiovascular is correct that "[t]he law is quite clear that whether removal jurisdiction is present depends on the claims as they are stated 'at the time of removal.'" *Perritt v. Westlake Vinyls Co., LP*, 986 F. Supp.2d 726, 732 (M.D. La. 2013) (emphasis added) (citing *Cavallini v. State Farm Mutual Auto Insurance Co.*, 44 F. 3d 256, 264 (5th Cir. 1995). Further, "[i]f removal is based on the assertion that the plaintiff's claims are completely preempted and fall within ERISA's civil enforcement provision, then the defendant also has the burden of establishing the existence of an ERISA plan." No. 12-151, 2012 WL 3028036, at *3 (M.D. La. June 13, 2012), *report and recommendation adopted by* 2012 WL 302807 (M.D. La. July 24, 2012) (citing *Shearer v. Southwest Service Life Insurance Co.*, 516 F. 3d 276, 278–79 (5th Cir. 2008)). Here, United did not submit any plan documents or affidavits with its Notice of Removal to establish that any of the claims were governed by ERISA. Rather, United simply alleged in the Notice of Removal that, "[p]laintiff's claims, as stated in the Petition, relate to employee welfare benefit plans and accordingly are subject to federal law pursuant to [ERISA]." (Doc. 2 at ¶ 4). After the filing of its Notice of Removal, United then supplemented its Opposition to Cardiovascular's Motion to Remand with plan documents and an affidavit by a legal case information analyst that the plans were governed by ERISA (Docs. 9-14).

Cardiovascular argues that United failed to meet its burden of proving subject matter jurisdiction under ERISA because it failed to establish the existence of an ERISA plan at the time of removal. Although Cardiovascular asserts that the plan documents were necessary to make this determination,[3] United's brief statement in its Notice of Removal that the plans were governed my ERISA, is sufficient to establish federal question jurisdiction.[4] When determining jurisdiction, courts may rely on submissions filed after removal "so long as the post-removal filing sets forth facts developed at the time of removal." *Dixon v. Nan Ya Plastics Corp.*, 2007 WL 4561136 at *4 (M.D. La. 2007) (citing *Simon v. Wal-Mart Stores, Inc.*, 193 F. 3d 848, 851 n. 10 (5th Cir. 1993)). At the time of removal, United

---

[3] Cardiovascular cites to *Lowery v. Alabama Power Co.*, 483 F. 3d 1184 (11th Cir. 2007) to support its contention. *See id.* at 1213−15 ("In assessing whether removal was proper in such a case, the district court has before it only the limited universe of evidence available when the motion to remand is filed—i.e., the notice of removal and accompanying documents. If that evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings."). However, *Lowery* is clearly distinguishable from the instant case because the defendant in *Lowery* asserted no factual basis to support federal jurisdiction in its removal. Instead, the defendant requested that the court reserve ruling so that it could conduct discovery to obtain information from the plaintiffs that would establish jurisdiction. This request, the court found, was "tantamount to an admission that the defendants [did] not have a factual basis for believing that jurisdiction exist[ed]." *Id.* at 1217. Here, United clearly articulated the basis for jurisdiction at the time of removal. They then supplemented that claim with documentation confirming the veracity of that fact. Accordingly, Cardiovascular's reference to *Lowery* is unavailing.

[4] Cardiovascular's reliance on *Donelon v. Distribution by Datagen*, No. 12-151, 2012 WL 3028036 (M.D. La. June 13, 2012), *report and recommendation adopted by* 2012 WL 302807 (M.D. La. July 24, 2012) for the proposition that United has not met its burden of establishing the existence of an ERISA plan is unwarranted. First, the court in *Donelon* did not rely on a finding that the defendants failed to prove the existence of an ERISA plan. *See id.* at *4 ("[I]t is unnecessary to . . . decide whether there is an ERISA plan to determine whether this court has subject matter jurisdiction under ERISA. Defendants have totally failed to argue or demonstrate that this suit could have been brought by the plaintiff under ERISA."). Second, the *Donelon* court found that the defendants' arguments regarding the existence of an ERISA plan were "conclusory and unsupported" because the defendants' arguments relied upon exhibits that were not filed into the record. *Id.* at *4 n.14. Here, United filed evidence of an ERISA plan into the record, and raised the applicability of ERISA in its Notice of Removal. (Docs. 2, 9-2, 10-14).

alleged that the plans were subject to ERISA. (Doc. 2 at ¶ 4). Therefore, consideration of the post-removal documents is appropriate because the key fact -- that the plans were subject to ERISA -- had already been stated in the Notice of Removal.

Cardiovascular also avers that case law addressing post-removal documents in potential diversity cases where the amount in controversy is at issue is not applicable to the instant situation (Doc. 19 at pp. 8-10), yet Cardiovascular cites no authority to support this position. In fact, the only authority cited by Cardiovascular is a case from this Court regarding an amount in controversy issue in a diversity case. (*Id.* at p. 10) (citing *Perritt v. Westlake Vinyls Co., LP*, 986 F. Supp.2d 726 (M.D. La. 2013). Moreover, the Court finds that the facts of *Perritt* are sufficiently distinguishable because the defendant in *Perritt* sought to introduce "*new* exhibits [and] factual representations" because the Notice of Removal did not set forth any additional facts to support a conclusion that the jurisdictional amount was satisfied. *Id.* at 731-32. In other words, the defendant relied purely on the facts as stated in the petition. *Id.* The defendant then sought to provide additional exhibits, including affidavits in its opposition to the plaintiffs' motions to remand. *Id.* at 732. Here, as discussed previously, United stated the pertinent fact -- the applicability of ERISA -- in its Notice of Removal. (Doc. 2 at ¶ 4). United later supplemented this assertion with specific plan information. (*See* Docs. 9-14). No new factual representations were made. Accordingly, the Court finds Cardiovascular's contention to be without merit.

Cardiovascular next argues that this is a rate of payment and not a right of payment case, and thus, is not subject to complete preemption under ERISA. (Doc. 19 at pp. 15-16). In short, Cardiovascular avers that because the United Insureds are in fact covered as insureds of United, only the rate of payment is left to be determined. The Court disagrees.

Cardiovascular is correct that a claim that "implicates the rate of payment . . . rather than the right to payment under the terms of the benefit plan, does not run afoul of *Davila* and is not preempted by ERISA." *Lone Star OB/GYN Associates v. Aetna Health, Inc.* 579 F. 3d 525, 529 (5th Cir. 2009). Further, where "a medical service is determined to be covered and the only remaining issue is the proper contractual rate of payment, coverage and benefit determinations are not implicated and the claims are not preempted." *Id.* at 532. However, this is not a straightforward "rate of payment" case. As Cardiovascular makes clear, a claim brought pursuant to a separate provider agreement implicating the rate of payment set forth in the agreement would not be completely preempted by ERISA. *Lone Star*, 579 F. 3d at 530. Here, however, Cardiovascular does not allege it entered into a provider agreement with United that established a contractual rate of services separate from the United health insurance policies. Instead, Cardiovascular seeks to recover "the Usual and Customary Rates pursuant to the United health insurance policies issued to the United Insureds." (Doc. 1 at ¶ 13). As a result, the issue here is indeed the "right to payment" pursuant to the

insurance policies, not the rate of payment pursuant to a provider agreement.[5] Thus, this objection is also without merit.

Cardiovascular's final contention is that the Magistrate Judge erred in exercising supplemental jurisdiction over the non-ERISA plans. (Doc. 19 at pp.17-18). Again, this Court disagrees. Under 28 U.S.C. § 1367(c)(2), a district court "may decline to exercise supplemental jurisdiction over a claim . . . if the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." Cardiovascular argues that the Magistrate Judge's Report concludes only that the breach of contract claim is subject to this Court's original jurisdiction based upon ERISA preemption. Cardiovascular then contends that the remaining claims (negligent representation, detrimental reliance, failure to investigate, open account, and bad faith) substantially predominate over this single claim such that the exercise of supplemental jurisdiction would be inappropriate.

However, the specific mention of the breach of contract claim in the Magistrate Judge's report is merely an illustration of how the other claims could also be completely preempted under ERISA. For similar reasons, Cardiovascular's claim for open account could also be completely preempted by ERISA because any state law cause of action that "duplicates, supplements or supplants" the civil enforcement remedies of ERISA conflicts with Congress's intent to make the ERISA remedy exclusive, and is completely preempted. *Davila*, 542 U.S. at 209. Even if all

---

[5] *See Memorial Hermann Hospital System v. Aetna Health Inc.*, No. H-11-267, 2011 WL 3703770 at *3 (S.D. Tex. 2011) ("When the question is the right of payment, as opposed to the rate of payment, ERISA complete preemption is triggered.") (citing *Lone Star*, 579 F.3d at 530−31).

of the claims do not duplicate the civil enforcement provisions of ERISA, such as the negligent misrepresentation and detrimental reliance claims, this Court can comfortably exercise supplemental jurisdiction over any remaining state claims because those claims all arise out of the same set of operative facts. *See Exxon Mobil Corp. v. Allapattah Services Inc.*, 545 U.S. 546, 588 (2005). Although Cardiovascular further argues that only one of the insured's plans was subject to ERISA preemption, the Spalinski Declaration (Doc. 9-1 at ¶ 4) makes clear that all but two of the plans are governed by ERISA.

Having carefully considered Cardiovascular's motion, complaint and related filings, the Court approves the Magistrate Judge's Report, and hereby adopts its findings of fact, conclusions of law, and recommendation.

Accordingly,

**IT IS ORDERED** that the **Magistrate Judge's Report and Recommendation (Doc. 18)** is **ADOPTED** as the Court's opinion herein.

**IT IS FURTHER ORDERED** that Plaintiff's **Motion to Remand (Doc. 6)** is **DENIED**.

Baton Rouge, Louisiana, this 4th day of March, 2015.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**