## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

CARDIOVASCULAR SPECIALTY                          CIVIL ACTION
CARE CENTER OF BATON ROUGE,
LLC

VERSUS

UNITED HEALTHCARE OF                              NO.: 14-00235-BAJ-RLB
LOUISIANA, INC.

### RULING AND ORDER

Before the Court is a **Motion for Partial Summary Judgment (Doc. 73)** filed by Defendant United Healthcare of Louisiana, Inc. ("Defendant"). Plaintiff Cardiovascular Specialty Care Center of Baton Rouge, LLC ("Plaintiff") has filed a memorandum in opposition (Doc. 85), to which Defendant has replied (Doc. 86). For reasons explained herein, Defendant's motion is **GRANTED**.

### I.   BACKGROUND

Plaintiff filed its controlling Second Amended Complaint on December 2, 2015. (Doc. 62). The complaint raises an Employee Retirement Income Security Act of 1974 ("ERISA") claim, 29 U.S.C. § 1132(a)(1)(B), and five state law claims. Defendant now moves to dismiss four of Plaintiff's state law claims pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule"). Those claims specifically allege: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) violation of Louisiana's Any Willing Provider Act, and (4) open account. (*Id.* at ¶¶ 665—702).

1

## II.     STANDARD OF REVIEW

Pursuant to the Rule 56, "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the Court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the motion for summary judgment must be denied. *Int'l Shortstop, Inc.*, 939 F.2d at 1263.

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element

essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

## III.   DISCUSSION

### A.   Breach of Contract

Plaintiff's first state law cause of action alleges breach of contract. (Doc. 62 at ¶¶ 665—82). "It is obvious that an individual cannot be liable for breach of a contract to which he is not a party," *B-G & G Inv'rs VI, L.L.C. v. Thibaut HG Corp.*, 2008-0093, p. 6 (La. App. 4 Cir. 5/21/08); 985 So. 2d 837, 842; *see also Sanderson v. H.I.G. P-XI Holding, Inc.*, No. CIV. A. 99-3313, 2000 WL 1042813, at *3 (E.D. La. July 27, 2000) ("It is beyond dispute that privity between a plaintiff and defendant is necessary to the maintenance of an action on a contract."), and "[i]t is undisputed that [Plaintiff] and [Defendant] are not parties to a single written agreement," *Roche v. Zenith Ins. Co.*, No. 07-CV-0875-MJR-PMF, 2009 WL 635503, at *2 (S.D. Ill. Mar. 12, 2009). Defendant and non-party First Health Group Corporation ("First Health") entered into one contract in 2006, (Doc. 54-1) (the "United Agreement"), and Plaintiff and non-party Coventry Health Care of Louisiana entered into another contract in 2013, (Doc. 73-6 at pp. 12—31) (the "Cardiovascular Agreement"). Plaintiff nonetheless raises the same argument as the plaintiff in *Roche*: that these "two

3

separate instruments constitute one agreement because the contracts necessarily create a relationship that includes certain obligations and benefits as between [Plaintiff] and [Defendant]." 2009 WL 635503 at *2. Plaintiff even cites the same case law as the plaintiff in *Roche*: *Baylor Univ. Med. Ctr. v. Epoch Grp., L.C.*, 340 F. Supp. 2d 749, 754—55 (N.D. Tex. 2004). *Baylor* recognized that, under *Texas* law, courts have the right to effectively create privity by construing multiple agreements as one. *Id.* However, *Baylor* is inapplicable where, as here, the Cardiovascular Agreement is governed by *Louisiana* law, (Doc. 73-6 at p. 21), and that is the agreement that Defendant is alleged to have breached, (*see* Doc. 62 at ¶¶ 28—29, 666).

Plaintiff further argues that the Louisiana courts have held that "[c]ontracts pertaining to the same transaction may be read together to determine the parties' intent." (Doc. 85 at p. 6). For support, Plaintiff cites *Tramonte v. Palermo*, 640 So. 2d 661, 665 (La. Ct. App. 1994), wherein the court held that "[a]greements, of contemporaneous date, some making reference to the others must be construed together, and, thus construed, what is doubtful in one may be made clear by what is found in the other." Plaintiff also cites *Succession of Lindsey*, 477 So. 2d 148, 156 (La. Ct. App. 1985), wherein the court held that an "agreement may be explained by reference to other contracts on the same subject between the same parties, either before or after [the disputed] one, with preference for the interpretation which gives the agreement effect." Factual distinctions aside, *Tramonte* and *Lindsey* address questions of contractual interpretation. That is, they assume privity of contract between the litigants.

4

Plaintiff argues that the Fifth Circuit held in *Liberty Mut. Ins. Co. v. Gunderson*, 305 F. App'x 170, 176 (5th Cir. 2008), that privity exists between parties to a PPO Contact (the United Agreement) and a Provider Agreement (the Cardiovascular Agreement). But *Gunderson* addressed "privity for res judicata purposes," not privity of contract. *See E.E.O.C. v. Jefferson Dental Clinics, PA*, 478 F.3d 690, 694 n.1 (5th Cir. 2007). It therefore has no bearing on Plaintiff's breach of contract claim.

Plaintiff alternatively argues that Defendant "is a third party beneficiary to the" Cardiovascular Agreement. (Doc. 62 at ¶ 679). That allegedly gives Plaintiff the right to sue Defendant for breaching the Cardiovascular Agreement. (*Id.* at ¶ 681). "Louisiana law allows for the inclusion of third-party beneficiaries to a contract, commonly known as a 'stipulation *pour autrui.*'" *Robinson v. ICF Emergency Mgmt. Servs., L.L.C.*, 453 F. App'x 528, 531 (5th Cir. 2011); *see also* LA. CIV. CODE ANN. art. 1978. A third-party beneficiary may sue a contracting party for breach of contract if "1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee." *Waste Commanders, LLC v. BFI Waste Servs., LLC*, No. CIV.A. 14-938, 2015 WL 1089320, at *2 (W.D. La. Mar. 2, 2015) (quoting *Joseph v. Hosp. Serv. Dist. No. 2 of Par. of St. Mary*, 2005-2364, p. 8 (La. 10/15/06); 939 So. 2d 1206, 1212).

Assuming *arguendo* that Defendant is a third party beneficiary to the Cardiovascular Agreement, no provision of the Louisiana Code contemplates what

5

Plaintiff now proposes: that a contracting party can sue a third party beneficiary for breach of contract. LA. CIV. CODE ANN. art. 1981, for example, "gives the *third party beneficiary* the right to demand performance from the promisor." It does not give the promisor the right to demand performance from the third party beneficiary. "In a stipulation *pour autrui* the [third party] beneficiary [is] never . . . a party to the contract." *Merco Mfg., Inc. v. J. P. McMichael Const. Co.*, 372 F. Supp. 967, 972 (W.D. La. 1974). The third party beneficiary therefore cannot be held liable "for the breach thereof." *Willis v. Tunica Hardwood Co.*, 347 So. 2d 1300, 1302 (La. Ct. App.), *writ denied*, 350 So. 2d 1229 (La. 1977).

The Court finds that Plaintiff and Defendant are not in privity of contract,[1] and even if they were, Plaintiff's breach of contract claim against Defendant as a third-party beneficiary is not recognized under Louisiana law. Accordingly, Plaintiff's breach of contract claim is **DISMISSED WITH PREJUDICE** pursuant to Rule 56.[2]

### B.   Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's second state law cause of action alleges breach of implied covenant of good faith and fair dealing. (Doc. 62 at ¶¶ 683—86). "As a general rule, Louisiana recognizes an implied covenant of good faith and fair dealing in every contract." *Clark*

---

[1] Lest there be any doubt, Section 5.8 of the Cardiovascular Agreement does not place Plaintiff and Defendant in privity of contract. That section merely states that the Cardiovascular Agreement "shall he interpreted to be between [Plaintiff] Provider and . . . [Defendant] Payor . . . ." Doc. 73-6 at p. 21.

[2] This, of course, does not in any way affect Plaintiff's detrimental reliance claim. Doc. 62 at ¶¶ 703—07. "To prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract." *Am. Signal Co. v. Toomer Elec. Co.*, No. CIV.A. 04-100-JJB-SC, 2009 WL 3379074, at *2 (M.D. La. Oct. 15, 2009) (quoting *Suire v. Lafayette City-Par. Consol. Gov't*, 2004-1459, p. 31 (La. 4/12/05); 907 So. 2d 37, 59).

*v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997); *see also Brill v. Catfish Shaks of Am., Inc.*, 727 F. Supp. 1035, 1039 (E.D. La. 1989). However, "[a] breach of the duty of good faith and fair dealing requires a breach of a contract." *Schaumburg v. State Farm Mut. Auto. Ins. Co.*, 421 F. App'x 434, 439 (5th Cir. 2011). The Court has already held, *inter alia*, that Defendant did not breach the Cardiovascular Agreement. Accordingly, Plaintiff's breach of the implied convent of good faith and fair dealing claim is **DISMISSED WITH PREJUDICE** pursuant to Rule 56.

### C.    Violation of Louisiana's Any Willing Provider Act

Plaintiff's third state law cause of action arises under the Louisiana Preferred Provider Organization Act, otherwise known as Louisiana's Any Willing Provider Act, LA. REV. STAT. ANN. § 40:2201 *et seq.* (Doc. 62 at ¶¶ 687—96). More specifically, Plaintiff alleges that Defendant violated LA. REV. STAT. ANN. § 40:2203.1(C), which states that:

> A preferred provider organization agreement shall not be applied or used on a retroactive basis unless all providers of medical services that are affected by the application of alternative rates of payment receive written notification from the entity that seeks such an arrangement and agree in writing to be reimbursed at the alternative rates of payment

(*Id.* at ¶ 688). Defendant avers that summary judgment is proper as to this claim because there is no genuine dispute of material fact that Section 3.1.1 of the Cardiovascular Agreement, (Doc. 73-6 at p. 17), contemplates that Defendant will reimburse Plaintiff at an alternate rate of payment. In its memorandum in opposition, Plaintiff admits that it agreed to service "United members [at] discounted

7

rates . . . ." (Doc. 85 at p. 10); (*see also* Doc. 62 at ¶ 21). Why then, one might wonder, should the Court not immediately dismiss Plaintiff's Any Willing Provider Act claim? Well, according to Plaintiff, because the entire Cardiovascular Agreement was "premised on the understanding that [it] was to be promptly reimbursed by [Defendant] for that discounted rate." (Doc. 85 at p. 10). Such a cause of action arises under LA. REV. STAT. ANN. § 40:2203.1(E), which states that:

> Any claim submitted by a provider for services provided to a person identified by the provider and a group purchaser as eligible for alternative rates of payment in a preferred provider agreement shall be subject to the standards for claims submission and timely payment according to the provisions of [LA. REV. STAT. ANN. §§ 22:1831—38].

Plaintiff's Second Amended Complaint never explicitly or implicitly mentions LA. REV. STAT. ANN. § 40:2203.1(E),[3] and Plaintiff's attempt to amend its complaint by way of a memorandum in opposition is not well taken. The now-applicable Rule 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Plaintiff has received neither. The Court therefore will not consider Plaintiff's LA. REV. STAT. ANN. § 40:2203.1(E) claim.

Plaintiff admits that it agreed to service "United members [at] . . . discounted rates . . . ." Section 3.1.1 of the Cardiovascular Agreement confirms as much. Accordingly, Plaintiff's Any Willing Provider Act claim, brought pursuant LA. REV.

---

[3] In fact, Plaintiff's complaint only addresses the timeliness of Defendant's payments in the context of Plaintiff's ERISA claim. *See, e.g.*, Doc. 62 at ¶ 721 ("United has failed to properly and timely pay CSCC's claims for benefits based upon the services provided by CSCC to the United Insureds, and pursuant to the terms of the plans issued or administered by United, as set forth more specifically herein.").

STAT. ANN. § 40:2203.1(C), is **DISMISSED WITH PREJUDICE** pursuant to Rule 56.

### D.   Open Account

Plaintiff's fourth state law claim is for open account. (Doc. 62 at ¶¶ 697—702). It relies upon LA. REV. STAT. ANN. § 9:2781(A), which states:

> When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Citation and service of a petition shall be deemed written demand for the purpose of this Section. If the claimant and his attorney have expressly agreed that the debtor shall be liable for the claimant's attorney fees in a fixed or determinable amount, the claimant is entitled to that amount when judgment on the claim is rendered in favor of the claimant. Receipt of written demand by the person is not required.

"Where there is no contractual relationship between the parties, there can be no recovery on an open account basis." *F. Christiana & Co. v. Matt's Grocery, Inc.*, No. 2, 95-2073 (La. App. 4 Cir. 5/8/96), 674 So. 2d 419, 421. Plaintiff's complaint asserts that:

> CSCC's claims for open account are based upon the independent legal duty owed by United pursuant to the [Cardiovascular Agreement]. . . . The determination of the rate that United owes CSCC under the PPO Agreement does not require any kind of benefit determination under the ERISA plan.

(Doc. 62 at ¶ 699). Even assuming *arguendo* that Defendant, as a third party beneficiary to the Cardiovascular Agreement, has a "contractual relationship" with Plaintiff, a contracting party, *but see Zaveri v. Condor Petroleum Corp.*, 27 F. Supp. 3d 695, 704 (W.D. La. 2014) ("It is undisputed that there is no contract between the

9

Partnerships and Condor. Rather, the sole alleged contractual relationship is between Zaveri and Condor. The Partnerships therefore claim to be third party beneficiaries of this contract."); *Stall v. State Farm Fire & Cas. Co.*, 2008-0649, p.5 (La. App. 4 Cir. 10/29/08); 995 So. 2d 670, 674 ("Ms. Stall is not a named insured under the RSUI policy, nor does she have a contractual relationship with RSUI. Ms. Stall is also unable to show that she is a third-party beneficiary of the RSUI policy."), summary judgment as to Plaintiff's open account claim is proper for the reasons stated *supra*. Plaintiff admits and the Cardiovascular Agreement confirms that Plaintiff agreed to service United members at discounted rates, and Plaintiff's attempt to re-characterize its rate-of-payment allegations as timeliness-of-payment allegations is not permitted.

The Court further finds that by failing to respond to Defendant's argument that Plaintiff's open account claim should be dismissed with prejudice, (*see* Doc. 85), Plaintiff has waived any opposition thereto, s*ee Knudsen v. Bd. of Sup'rs of Univ. of Louisiana Sys.,* No. CIV.A. 14-382, 2015 WL 1757695, at *1 (E.D. La. Apr. 16, 2015) ("A party's failure to brief an argument in response to a summary judgment motion waives that argument."); *S.O.S. Salson, Inc. v. Acad. Corp.*, No. CIV.A. H-09-3145, 2010 WL 4570002, at *6 (S.D. Tex. Nov. 4, 2010) ("The failure to brief an argument in the district court waives that argument in that court") (internal quotations omitted). Accordingly, Plaintiff's open account claim is **DISMISSED WITH PREJUDICE** pursuant to Rule 56.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motion for Partial Summary Judgment (Doc. 73)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's breach of contract claim, breach of the implied covenant of good faith and fair dealing claim, violation of Louisiana's Any Willing Provider Act claim, and open account claim are **DISMISSED WITH PREJUDICE** pursuant to Rule 56.

Baton Rouge, Louisiana, this _19th_ day of August, 2016.

_____

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

11