UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CARDIOVASCULAR SPECIALTY CARE CENTER OF BATON ROUGE, LLC

CIVIL ACTION

VERSUS

UNITED HEALTHCARE OF LOUISIANA, INC.

NO.: 14-00235-BAJ-RLB

## RULING AND ORDER

Before the Court is the **Motion for Summary Judgment on Counts V and VI of Plaintiff's Second Amended Complaint (Doc. 99)** filed by Defendant United Healthcare of Louisiana, Inc. Defendant seeks summary judgment on Plaintiff's remaining claims, in which Plaintiff asserts theories of detrimental reliance, see La. Civ. Code art. 1967, and the failure to pay benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. ch. 18.[1] Plaintiff filed a memorandum in opposition to the Motion, (see Doc. 108), and Defendant filed a reply to Plaintiff's memorandum in opposition, (see Doc. 114). On March 17, 2017, the Court held oral argument on the Motion.[2] For the reasons explained herein, Defendant's **Motion for Summary Judgment on Counts V and VI of Plaintiff's Second Amended Complaint (Doc. 99)** is GRANTED.

---

[1] Plaintiff asserted four other claims to relief in its Second Amended Complaint, (see Doc. 62 at pp. 87-92), but the Court previously granted summary judgment in favor of Defendant on those claims, (see Doc. 94).

[2] During the March 17, 2017, hearing, the Court also heard oral argument on Plaintiff's Motion for Partial Summary Judgment (Doc. 100).

1

I.  **BACKGROUND**

Plaintiff Cardiovascular Specialty Care Center of Baton Rouge, LLC – which provides cardiovascular services to patients in Baton Rouge, Louisiana – initiated this lawsuit to collect payment from Defendant United Healthcare of Louisiana, Inc., for services that Plaintiff rendered to patients who were insured by Defendant.

The procedure that Plaintiff utilized to communicate with Defendant before performing a procedure on a patient who was insured by Defendant is undisputed.[3] Before rendering medical services to a patient, Plaintiff generally would contact a representative of Defendant by telephone.[4] During such a telephone call, Plaintiff would provide information to Defendant regarding the diagnosis of a patient and the medical necessity of the proposed services.[5] In return, Defendant would communicate to Plaintiff a determination of medical necessity for purposes of coverage under each patient's insurance plan.[6] Following this telephone call, Plaintiff then would access an online portal that is maintained by Defendant, in which Plaintiff could access information such as the deductibles and co-insurance amounts associated with the patient's insurance plan.[7] Plaintiff then would record the information obtained

---

[3] *Compare* Doc. 108-1 at ¶ 6 (outlining the procedure that Plaintiff would utilize to communicate with Defendant, according to Martin James Fischer, an administrator for Plaintiff), *with* Doc. 99-1 at pp. 6-7 (stating that Plaintiff would "call" Defendant to obtain "benefit[-]level information").

[4] Doc. 108-1 at ¶ 6(i).

[5] *Id.*

[6] *Id.*

[7] *Id.*

through this process, which generally consisted of the patient's in-network and out-of-network deductibles and the maximum amount of expenses that a patient would be required to pay out-of-pocket for any medical services rendered.[8]

Plaintiff also required all patients relevant to this suit to sign a "Release of Information Form."[9] By signing this document, all patients executed an assignment in favor of Plaintiff, which stated, "I authorize and request my insurance company to pay directly to the doctor the amount due to me in my pending claim for Medical or Surgical treatment or services, by reason of such treatment or services rendered to me."[10]

After Defendant allegedly failed to pay claims submitted by Plaintiff to its satisfaction, Plaintiff brought this lawsuit, claiming – among other grounds – that it had relied, to its detriment, on representations made by Defendant that it would pay the claims and that Defendant had failed to pay benefits pursuant to ERISA.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of

---

[8] *See* Doc. 108-3. Additionally, Plaintiff oftentimes would recorded a "precert" number for a patient. *See id.* Plaintiff has not provided context for these numbers, given details regarding from whom they were obtained, or explained the significance of these numbers. *See* Docs. 108, 108-1.

[9] *See, e.g.*, Doc. 99-4.

[10] *E.g., id.* at p. 1.

materials in the record [–] including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, [and] interrogatory answers" – or by averring that an adverse party cannot produce admissible evidence to support the presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).

"[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation marks and citations omitted). In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-movant] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

Defendant asserts that it is entitled to summary judgment on Plaintiff's detrimental reliance claim, arguing that it never represented to Plaintiff that any of the procedures it performed on patients would be covered under those patients' plans or that Defendant would pay a certain amount for those procedures. Defendant additionally asserts that it nonetheless was unreasonable for Plaintiff to rely on information regarding the medical necessity of a procedure and a patient's level of benefits to assume that Defendant would pay Plaintiff a certain amount for a particular procedure. Defendant also argues that it is entitled to summary judgment on Plaintiff's claim pursuant to ERISA for Defendant's alleged failure to pay benefits because Plaintiff does not have standing to pursue such a claim.[11] Because Defendant never engaged in conduct that can be construed as a "representation" that Plaintiff would be paid a certain amount for the services it rendered and because the relevant patients did not fully assign their rights to benefits under their insurance plans to Plaintiff, Defendant is entitled to summary judgment on Plaintiff's claims for detrimental reliance and failure to pay benefits under ERISA.

### A. Detrimental Reliance

Louisiana Civil Code article 1967 provides that "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so

---

[11] Defendant offers alternative arguments in the Motion regarding its entitlement to summary judgment on Plaintiff's claim for failure to pay benefits under ERISA, *see* Doc. 99-1 at pp. 7-13, but it is unnecessary for the Court to address these alternative arguments because the Court finds that Plaintiff lacks standing to pursue a claim under ERISA.

relying." La. Civ. Code art 1967. "It is difficult to recover under the theory of detrimental reliance, because such a claim is not favored in Louisiana," *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 334 (5th Cir. 2007), and claims for detrimental reliance "must be examined carefully and strictly," *May v. Harris Mgmt. Corp.*, 2004-2657, p. 6 (La. App. 1 Cir. 12/22/05); 928 So. 2d 140, 145. "To establish detrimental reliance, a party must prove . . . (1) a representation by conduct or word . . . (2) made in such a manner that the promisor should have expected the promisee to rely upon it[,] (3) justifiable reliance by the promisee[,] and (4) a change in position to the promisee's detriment because of the reliance." *Id.* In order to be deemed a "representation" for purposes of succeeding on a claim for detrimental reliance, Plaintiff must demonstrate that Defendant engaged in conduct or made a statement that it "should have expected [Plaintiff] to rely upon." *Suire v. Lafayette City-Par. Consol. Gov't*, 2004-1459, p. 32 (La. 4/12/05); 907 So. 2d 37, 59.

Defendant argues that it never engaged in conduct that can be construed as a "representation" under the theory of detrimental reliance because for each relevant patient, Plaintiff merely obtained a medical-necessity determination through a telephone call with a representative of Defendant, as well as benefits-level information from an online portal maintained by Defendant. Defendant, in essence, avers that its acts of providing a medical-necessity determination for a particular procedure and general benefits-level information for a particular patient cannot constitute a "representation" that Plaintiff would be paid a certain amount for that procedure. Plaintiff asserts that this information that it obtained from Defendant

6

constituted a "representation" by Defendant that Plaintiff "would be reimbursed for the medical services provided by [Plaintiff]" to patients who were insured by Defendant. (Doc. 108 at p. 6).

In support of this contention, Plaintiff submitted the affidavit of Martin James Fischer ("Fischer"), who by virtue of his capacity as an administrator for Defendant is intimately familiar with the "policies and procedures relating to the provision of medical services to [Plaintiff]'s patients and the reimbursement of the costs associated therewith from insurers and plan administrators." (Doc. 108-1 at ¶ 4). Fischer stated that "[a]s a general practice, prior to performing any services" on patients who are insured by Defendant, Plaintiff first "contacts [Defendant's] representatives via telephone [and] provides [Defendant] information regarding the diagnoses and medical necessity of the proposed services[, whereby Defendant] communicate[s] to [Plaintiff] the determination of medical necessity for purposes of insurance coverage under the relevant plan of insurance." (*Id.* at ¶ 6(i)). Fischer stated that Plaintiff then "accesses an online . . . portal [that is maintained by Defendant] wherein [Plaintiff] obtains information from [Defendant] regarding the benefits levels specific to the [patient who is insured by Defendant], including deductibles, co-insurance, accumulations, and applicable percentages of allowables of reasonable and customary rates." (*Id.* at ¶ 6(ii)). Fischer implies, but does not state, that the information obtained from the telephone call and online portal constitutes a "pre-certification" to render medical services, (*see id.* at ¶ 6(v)), and Plaintiff asserts that it "believe[d] that it would be reimbursed for the medical services provided" to

patients insured by Defendant on the basis of the "telephone representations and online portal information, as well as continued payment of other claims." (Doc. 108 at pp. 5-6).[12]

Even accepting as true Plaintiff's allegations that Defendant – through a representative – provided a medical-necessity determination for each procedure during a telephone conversation and that Defendant maintained an online portal that conveyed information regarding a patient's deductible amounts and out-of-pocket maximums to Plaintiff, Plaintiff's claim for detrimental reliance fails as a matter of law. A determination of the medical necessity of a particular procedure is not the equivalent of a representation that benefits will be paid to cover the cost of that procedure; rather, a medical-necessity determination is but the first step in the process to determine the coverage of a procedure under a patient's insurance plan.[13]

---

[12] Plaintiff does not contend that the "precert" numbers contained in its records of the information it obtained from the telephone communication and the online portal are relevant to this dispute or that it relied in any way on those numbers in determining whether to render medical services to the patients at issue. *See* Doc. 108 at pp. 5-6 ("Between the *telephone representations and online portal information*, as well as continued payment of other claims, [Defendant] led [Plaintiff] to believe that it would be reimbursed for the medical services provided . . . ."). Fischer likewise makes no mention of the "precert" numbers in his affidavit. *See* Doc. 108-1.

Defendant submitted – in connection with its reply memorandum – the affidavit of Lisa A. Caslake ("Caslake"), a manager in the "Clinical Coverage Review area" of Defendant, in which Caslake stated that the "precert" numbers in the records submitted by Plaintiff do not pertain to Plaintiff, but rather nonrelated in-network physicians. *See* Doc. 114-1 at p. 2. The Court finds that this affidavit and the attached letters, which correspond with the "precert" numbers, are irrelevant to the issue at bar because Plaintiff has never represented to the Court that it relied on these numbers to its detriment in determining whether to render medical services to patients insured by Defendant, let alone that those numbers even were *provided* by Defendant. *See* Doc. 108. The Court thus has not considered Caslake's affidavit or the attached letters – or any of Defendant's related argument – in reaching its conclusions in this Ruling and Order. Consequently, Plaintiff's **Motion to Strike Exhibits to Reply Memorandum of United Healthcare of Louisiana, Inc. (Doc. 115)** is moot.

[13] For example, Plaintiff has stated in its Second Amended Complaint that Defendant refused to pay one of the claims at issue in this lawsuit because it could not verify the licensure of the facility to perform the procedure. *See* Doc. 62 at ¶ 83. It is clear that there are additional details other than the

*See Toups v. Moreno Grp.*, No. 6:11-cv-01559-RFD-CMH, 2013 WL 1187102, at *13 (W.D. La. Mar. 21, 2013). In fact, Plaintiff has put forth no evidence that Defendant ever made any representation about the amount that it would pay on a certain claim or that Plaintiff obtained any claim-specific payment information from Defendant for any of the patients relevant to this litigation. *See Ctr. for Restorative Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, No. 2:11-cv-00806-SM-MBN, 2016 U.S. Dist. LEXIS 143531, at *33-34 (E.D. La. Sept. 19, 2016) (finding that a healthcare provider's obtaining "basic plan information, such as the amount of the deductible, out-of-pocket maximum, and coinsurance" from an online portal maintained by an insurer did not amount to a "promise or representation" for purposes of a detrimental reliance claim because the healthcare provider failed to produce summary judgment evidence that "the insurer [would] pay for a specific claim" or that the online portal "contained a representation that the [insurer would] pay a certain amount for a procedure"). Further, Plaintiff has produced no evidence that the representatives of Defendant with whom Plaintiff communicated regarding the medical necessity of procedures had the authority to render decisions regarding benefits on Defendant's behalf or that the representatives portrayed themselves to have such authority. *See Toups*, 2013 WL 1187102, at *13.

Plaintiff essentially asks the Court to convert Defendant's provision to Plaintiff of a medical-necessity determination and general benefits-level information into a

---

medical necessity of a certain procedure – such as, but not limited to, the verification of the facility's licensure – that must be verified in order for Defendant to pay a claim under a patient's insurance plan.

*guarantee* that Defendant would pay a certain amount on a claim.[14] The law of detrimental reliance – a claim that is disfavored in Louisiana – does not allow for such a remedy. *See Ark-La-Tex Timber Co.*, 482 F.3d at 334. The conduct that Defendant engaged in pursuant to the evidence in this case – as conveyed to the Court by the Plaintiff – cannot be construed as a representation that Defendant would pay a certain amount on each claim that Plaintiff submitted to it, and therefore Plaintiff's detrimental reliance claim fails as a matter of law.[15] *See Suire*, 2004-1459 at p. 32; 907 So. 2d at 59. Defendant therefore is entitled to summary judgment on Plaintiff's detrimental reliance claim. Fed. R. Civ. P. 56(a)

### B. Failure to Pay Benefits Under ERISA

"Health[]care providers are not statutorily designated as ERISA beneficiaries." *Touro Infirmary v. Am. Mar. Officer*, No. 2:07-cv-01441-EEF-KWR, 2007 WL 4181506, at *4 (E.D. La. Nov. 21, 2007). Thus, a healthcare provider only has standing to sue to recover benefits under 29 U.S.C. § 1132 "when a plan beneficiary

---

[14] Plaintiff also impliedly asks the Court to find that because Defendant had paid other claims during the same time period, Defendant thereby had represented that it would pay *all* claims submitted by Plaintiff. Such an argument leads to absurd results: an insurer would be required either to approve all claims made by a healthcare provider once the insurer had approved previous claims or face litigation for detrimental reliance – a disfavored claim in Louisiana. *See Ark-La-Tex Timber Co.*, 482 F.3d at 334.

[15] Even assuming *arguendo* that Plaintiff *could* demonstrate that Defendant's providing a medical-necessity determination through a telephone call and benefits-level information through its online portal *did* constitute a representation that it would pay a certain amount to Plaintiff on each claim, Plaintiff's reliance on that representation nonetheless would be unreasonable. The vagueness of this alleged representation – which is comprised merely of the provision of a medical-necessity determination and information regarding a patient's levels of benefits – renders Plaintiff's reliance on that alleged representation unreasonable insofar as it *assumed* that it would be paid a *certain amount* for a claim. *See Active Mortg., LLC v. Trans Union, LLC*, No. 3:09-cv-00986-JJB-SCR, 2010 WL 4627730, at *4 (M.D. La. Nov. 4, 2010) ("The representation upon which [P]laintiff relies must not be vague[,] and [P]laintiff's reliance cannot simply be based on assumption.")

or participant validly assigns his or her right to benefits under the plan to the provider." *Id.*

The assignment that Plaintiff obtained from its patients contained the following language: "I authorize and request my insurance company to pay directly to the doctor the amount due to me in my pending claim for Medical or Surgical treatment or services, by reason of such treatment or services rendered to me." (*E.g.*, Doc 99-4 at p. 1). Defendant asserts that this language does not constitute an "assignment to seek benefits on behalf of an ERISA plan beneficiary," but rather instructs a patient's insurance company to make payments directly to Plaintiff, instead of the patient. (Doc. 99-1 at p. 9). Plaintiff retorts that an assignment of direct payment indeed is sufficient to confer standing to bring claims on a patient's behalf to recover benefits pursuant to ERISA.

The Court is persuaded by the reasoning in *Touro Infirmary v. American Maritime Officer*, No. 2:07-cv-01441-EEF-KWR, 2007 WL 4181506 (E.D. La. Nov. 21, 2007), which was cited approvingly by the United States Court of Appeals for the Fifth Circuit in *Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525, 531 n.5 (5th Cir. 2009). In *Touro Infirmary*, the court was faced with interpreting the language of an assignment that is very similar to the language in this case. *See* 2007 WL 4181506, at *5 ("I assign and hereby authorize . . . direct payment to the Hospital and/or to any Hospital[-]based physician of all insurance and health benefits otherwise payable to or on behalf of me for this hospitalization or for these outpatient services . . . ."). The court in *Touro Infirmary*, relying on the decisions of other district

courts, found that this language was "not a full assignment of benefits"; the language "simply authorizes direct payment to [the healthcare provider] and makes the patient responsible for any charges not paid by the patient's health plan." *Id.* at \*6 (citing *Cooper Hosp. Univ. Med. Ctr. v. Seafarers Health & Benefits Plan*, No. 1:05-cv-05941-JEI-JS, 2007 WL 2793372, at \*3 (D.N.J. Sept. 25, 2007)). The Court similarly finds that the language in the assignment in this case is not a full assignment of benefits, but rather an authorization for Defendant to pay Plaintiff directly for services it rendered to patients who were insured by Defendant. Plaintiff therefore has no standing to sue under ERISA. *See id.*

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motion for Summary Judgment on Counts V and VI of Plaintiff's Second Amended Complaint (Doc. 99)** is **GRANTED**.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 56, Plaintiff's **detrimental reliance claim** – Count 5 in Plaintiff's Second Amended Complaint, (*see* Doc. 62 at pp. 92-93) – is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's **claim for failure to pay benefits under the Employee Retirement Income Security Act of 1974** –

Count 6 in Plaintiff's Second Amended Complaint (*see id.* at pp. 93-102) – is **DISMISSED WITHOUT PREJUDICE** for lack of standing.

**IT IS FURTHER ORDERED** that **Plaintiff's Motion to Strike Exhibits to Reply Memorandum of United Healthcare of Louisiana, Inc. (Doc. 115)** is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that **Plaintiff's Motion for Partial Summary Judgment (Doc. 100)** is **DENIED**.

Baton Rouge, Louisiana, this 1ST day of June, 2017.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA